**POWER EQUIPMENT COMPANY,**
Plaintiff-Appellee,

v.

**UNITED STATES of America,**
Defendant-Appellant.

Nos. 83–5168, 83–5169.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 21, 1984.

Decided Nov. 29, 1984.

Rehearing and Rehearing En Banc
Denied Feb. 5, 1985.*

Cornelia G. Kennedy, Circuit Judge, filed dissenting opinion.

---

* Judge Kennedy would grant rehearing for the reasons stated in her dissent.

John W. Gill, Jr., U.S. Atty., Knoxville, Tenn., Robert T. Duffy, Bruce R. Ellisen, argued, Robert E. Rice, Glenn L. Archer, Jr., Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Charles A. Wagner, III, argued, Gentry & Wagner, Knoxville, Tenn., for Power Equipment Co.

---

* The Honorable Julian A. Cook, Jr., United States District Court for the Eastern District of Michigan, sitting by designation.

Before KENNEDY and WELLFORD, Circuit Judges, and COOK, District Judge.*

WELLFORD, Circuit Judge.

The United States appeals the Magistrate's judgment awarding Power Equipment Company (PEC) a refund of income taxes paid in 1975 on interest income received from various local Tennessee governmental units in connection with sales to those units of heavy construction equipment. The Magistrate found that PEC was entitled to exclude these interest payments from its gross income under I.R.C. § 103(a)(1) as interest on governmental obligations. The Magistrate decided this action on the following stipulated facts:

"1. Power Equipment Company is a corporation incorporated under the laws of the State of Tennessee and has its principal office and place of business on Alcoa Highway, Knoxville, Knox County, Tennessee.

"2. This Court has jurisdiction and venue pursuant to 28 U.S.C. §§ 1346(a)(1) and 1402(a)(1) and (2).

"3. Plaintiff is primarily engaged in the business of sale and maintenance of heavy construction equipment. In the course of its business, plaintiff sells construction equipment to various City, County and State governmental entities. Many of these sales are made on a deferred payment basis, with the governmental entity paying specified interest charges to plaintiff. In connection with these deferred payment sales, during tax years 1975–1978, the governmental entities paid and plaintiff received certain interest payments, and these interest payments were reported on plaintiff's timely filed corporate income tax returns for each of the tax years as excluded from gross income pursuant to § 103 of the Internal Revenue Code, 26 U.S.C. § 103, which provides in pertinent part as follows:

(a) General rule.—Gross income does not include interest on—

(1) the obligations of a State, a Territory, or a possession of the United States, or any political subdivision of any of the foregoing, or of the District of Columbia.

. . . . .

"4. On or about November 2, 1978, defendant, United States of America, acting by and through its Internal Revenue Service, sent a notice of deficiency to plaintiff .... That notice asserted that certain amounts ($32,465.00 for 1975 and $25,085.00 for 1976) received by plaintiff from political subdivisions of the State of Tennessee, which had been excluded by plaintiff as interest under § 103 of the Internal Revenue Code, were not properly excludable and made demand upon plaintiff for the payment of corporate income taxes on such amounts in the total amount of $27,624.28 ($15,583.28 for 1975 and $12,041.00 for 1976).

"5. On or about April 9, 1979, plaintiff paid to the defendant the alleged deficiency for 1975 and 1976 in the amount of $27,-624.48. On or about April 13, 1979, plaintiff filed with the Internal Revenue Center its form 1120X claiming a refund of income taxes paid in the amount of $15,583.28 for 1975 and $12,041.00 for 1976, resulting from the inclusion of amounts received by plaintiff as interest payments from political subdivisions of the State of Tennessee ... By letters dated March 1, 1980, ... plaintiff's claims for refund were disallowed.

"6. Defendant, by and through its Internal Revenue Service, included in plaintiff's gross income the sum of $27,762.56 for tax year 1975 and $24,987.64 for tax year 1976 which constituted interest payments from political subdivisions of the State of Tennessee, thereby resulting in taxes assessed against plaintiff in the amount of $13,326.02 for tax year 1975 and $11,994.06 for tax year 1976. A breakdown of the amounts and source of the interest proceeds included as gross income and the taxes which defendant assessed are listed below:

| | 1975 | 1976 |
|---|---|---|
| City of Chattanooga, [Tenn.] | $10,687.15 | |
| Anderson County, [Tenn.] | 1,292.36 | |
| Houston County, [Tenn.] | 691.50 | |
| Warren County, [Tenn.] | 6,378.84 | |
| Lincoln County, [Tenn.] | 2,097.45 | |
| City of Hendersonville, [Tenn.] | | $5,031.89 |
| Hamilton County Highway [Dept.] | | 6,483.23 |
| City of Knoxville, [Tenn.] | 621.20 | 1,708.63 |
| Scott County Highway [Dept.] | 4,044.40 | 3,366.80 |
| City of Lawrenceburg, [Tenn.] | | 5,084.16 |
| Monroe County Highway [Dept.] | 400.46 | 191.31 |
| Lawrence County Highway [Dept.] | 1,002.08 | |
| Lincoln County Highway [Dept.] | 425.42 | |
| Smith County Highway [Dept.] | | 633.95 |
| Van Buren Highway [Dept.] | 121.70 | 2,487.67 |
| | 27,762.56 | 24,987.64 |
| | ×.48 | ×.48 |
| Tax | $13,326.02 | $11,994.06 |
| Total Tax | | $25,320.08 |

. . . . .

These transactions and the resulting legal documents attached ... were not approved by the legislative or other governing body of each respective county or city nor by the state director of finance.

"7. On or about September 22, 1981, defendant, United States of America, acting by and through its Internal Revenue Service, sent a notice of deficiency to plaintiff .... That notice asserted that certain amounts ($10,513.63 for 1977 and $11,-

815.24 for 1978) received from political subdivisions of the State of Tennessee, which had been excluded by plaintiff as interest under § 103 of the Internal Revenue Code, were not properly excludable and made demand upon plaintiff for the payment of corporate income taxes on such amounts in the total amount of $10,986.76 ($5,316.44 for 1977 and $5,670.32 for 1978).

"8. On or about December 14, 1981, plaintiff paid to defendant the alleged deficiency for 1977 and 1978 in the amount of $10,986.76. On or about December 14, 1981, plaintiff filed with the Internal Revenue Service Center its form 1120X claiming a refund of the income taxes paid in the amount of $5,316.44 for 1977 and $5,670.32 for 1978 resulting from the inclusion of amounts received by plaintiff as interest payments from political subdivisions of the State of Tennessee .... By letters dated January 6, 1982 ... plaintiff's claims for a refund were disallowed.

"9. Defendant, by and through its Internal Revenue Service, included in plaintiff's gross income the sum of $11,488.39 for 1977 and $11,181.59 for 1978 which constituted interest payments from political subdivisions of the State of Tennessee, thereby resulting in taxes assessed against plaintiff in the amount of $5,514.43 for 1977 and $5,367.16 for 1978. A breakdown of the amounts and source of the interest proceeds included as gross income and the taxes which defendant assessed are listed below:

| | 1977 | 1978 |
|---|---|---|
| Van Buren County, [Tenn.] | $ 172.08 | $ 288.75 |
| Van Buren County, [Tenn.] | 2,186.10 | 1,894.62 |
| Scott County, [Tenn.] | 3,030.12 | 1,271.69 |
| City of Lawrenceburg, [Tenn.] | 4,519.20 | 6,213.90 |
| Giles County, [Tenn.] | 171.00 | 85.50 |
| Knoxville City Zoo, [Tenn.] | 621.32 | |
| Lincoln County Highway [Dept.] | 158.57 | 1,427.13 |
| Polk County Highway [Dept.] | 630.00 | |
| | $11,488.39 | $11,181.59 |
| | ×.48 | ×.48 |
| Tax | $ 5,514.43 | $ 5,367.16 |
| Total Tax | | $10,881.59 |

* * * * *

These transactions and the resulting legal documents ... were not approved by the legislative or other governing body of each respective county or city nor by the state director of finance."

The Magistrate first reviewed and rejected the government's contention that the sales transactions between PEC and the state entities violated various Tennessee statutes and therefore were not "obligations" of the entities within the meaning of I.R.C. § 103(a)(1) because they were not issued "by constituted authorities *empowered* to issue such obligations," as required by Treas.Reg. § 1.103–1(b) (1954 Code) (emphasis added). Although the Magistrate found that PEC had conceded that the transactions at issue violated Tennessee law, particularly that the "county purchasing agents entering the sales contracts violated the prohibition against commiting [sic] the county beyond the fiscal year in question [Tenn.Code Ann. § 5–14–108(m) (1980)], and that they entered purchase contracts which exceeded $500.00 without prior approval of the county legislative bodies [Tenn.Code Ann. § 54–8–107 (1980)]," he concluded:

While it may be true that at some point these contracts might have been voided by the cities and counties involved [because they violated Tennessee law], they are now wholly executory. The equipment has been delivered and fully paid for, with interest. There is no suggestion of fraud. Where contracts are fully

executed, and no fraud exists, the rights of the parties which have been established by the contracts will be given effect.

The Magistrate then noted that the Tennessee state courts had historically "found various estoppel or implied promise theories to preserve the effects of otherwise legitimate contracts entered improperly [citations omitted]" and, that therefore it was "probable that the plaintiff's contracts with the various Tennessee counties and cities would be upheld by Tennessee courts." Accordingly, the Magistrate, granting summary judgment against the government, held that I.R.C. § 103(a)(1) entitled PEC to exclude from its gross income the interest payments paid to it by the various state entities.

In reaching its holding, the Magistrate relied primarily on *Newlin Machinery Corp. v. Commissioner*, 28 T.C. 837 (1957). In *Newlin,* the Tax Court held that petitioner-taxpayer was entitled to exclude interest payments from various state entities as interest on governmental obligations, pursuant to I.R.C. § 22(b)(4) (1939 Code) (predecessor to I.R.C. § 103(a)(1) (1954 Code). In reaching this holding, the court noted that the government had not introduced specific evidence showing that the transactions between the petitioner-taxpayer and the governmental entities violated applicable state law. The Tax Court then applied a presumption in taxpayer's favor that the transactions complied with the state law; thus, the court made no determination as to whether these transactions actually violated that law, noting:

> Furthermore, the position of this Court has consistently been that where contracts are fully executed, and no fraud exists, the rights of the parties which have been established by the contracts will be given effect.

*Newlin,* 28 T.C. at 844. It was on this latter language that the Magistrate relied in reaching its holding in the case at bar.

PEC contends that this court should affirm the Magistrate's decision because the government acquiesced in *Newlin* and therefore is precluded from arguing against its application on this appeal. Prefacing the Commissioner's acquiescence in the *Newlin* decision, 1958-1 C.B. 5, is a discussion of the general effect of acquiescence:

> Notice that the Commissioner has acquiesced or non-acquiesced in a decision of The Tax Court relates only to the issue or issues decided adversely to the Government. Actions of acquiescences in adverse decisions should be relied on by Revenue officers and others concerned as conclusions of the Service *only to the application of the law to the facts in the particular case. Caution should be exercised in extending the application of the decision to a similar case unless the facts and circumstances are substantially the same, and consideration should be given to the effect of new legislation, regulations, and rulings as well as subsequent court decisions and actions thereon. Acquiescence in a decision means acceptance by the Service of the conclusion reached, and does not necessarily mean acceptance and approval of any or all of the reasons assigned by the Court for its conclusions.*

1958-1 C.B. 3 (emphasis added).

■ We note initially that the particular portion of the *Newlin* opinion relied on by the Magistrate is essentially dicta since the Tax Court held that the contracts at issue in that case were presumptively valid under state law; here, the Magistrate found that PEC had conceded that the contracts in question violated Tennessee law. Thus, the facts and circumstances of the instant case are distinguishable from those in *Newlin.* In addition, the Commissioner's acquiescence in *Newlin* does not necessarily mean that the Commissioner accepted and approved that language relied on by the Magistrate in this case since this language embodied an additional rationale for the Tax Court's decision. Further, the court in *Newlin* did not discuss the Treasury Regulation to I.R.C. § 22(b)(1) (1939 Code) (similar to § 103(a)(1) (1954 Code)) in effect at

the time it rendered its decision, which is substantially similar in language [1] to Treas. Reg. § 1.103–1(b), at issue on this appeal. For these reasons, we hold that the government's acquiescence in *Newlin* does not preclude the government's opposing the application of *Newlin* to the instant case by relying on Treas.Reg. § 1.103–1(b) as support for its contention that the requirement of that regulation "is that the obligations be properly authorized, not that they be enforceable [under an implied contract theory] even if not authorized." (Government's Brief at 13–14.)

It is not relevant to our determination whether the Tennessee courts would enforce the contracts at issue including the interest provision, since we agree with the government that the issue on this appeal is whether Treas.Reg. 1.103–1(b) requires that governmental obligations be properly *authorized* to merit exclusion from gross income under I.R.C. § 103(a)(1). This regulation cannot be ignored simply because of a finding that Tennessee courts would likely enforce the contracts at issue. This court is aware of no decision wherein a similar holding was reached in applying the interest exclusion.

The dissent cites a number of Tennessee cases as supporting the proposition that when a municipal contract, which was not properly approved, has been fully performed by the non-municipal party, there is an agreement implied in law enforceable under the exact terms of the original agreement. The dissent further claims that recovery is not limited to the benefit conferred, but is granted according to the contractual terms, including interest.

■ A careful reading of the Tennessee authority indicates, however, that when municipal contracts are invalid yet fully performed by one party, recovery is based on a theory of *quantum meruit. See, e.g.,*

*Keenan v. City of Trenton,* 130 Tenn. 71, 83, 168 S.W. 1053, 1056 (1914); *London & N.Y. Land Co. v. Jellico,* 103 Tenn. 320, 323, 52 S.W. 995, 996 (1899); *Trull v. City of Lobelville,* 554 S.W.2d 638, 643 (Tenn.Ct. App.1976); *Carter County v. Williams,* 28 Tenn.App. 352, 364, 190 S.W.2d 311, 316 (1945). Thus recovery is limited to the benefit conferred to the city, although this benefit may be measured by the contractual terms if otherwise fair and reasonable.

In *Trull v. City of Lobelville,* 554 S.W.2d 638 (Tenn.Ct.App.1976), the trial court had awarded a monetary judgment plus the legal rate of interest, but the court of appeals *reversed. See id.* 640, 643. In *Trull,* there was no contractual interest provision, such as that in the instant case, and the court of appeals refused to award any interest. It is not apparent that PEC could have enforced the contracts beyond a *quantum meruit* recovery; thus, it is not clear that the interest provisions were enforceable.

■ Although the court in *Newlin,* as noted earlier, stated that a fully executed contract would be given effect where no fraud exists, this statement can only be viewed as dicta since the court applied a *presumption* that the contracts at issue in that case were valid. Accordingly, we find that the Magistrate erred in basing its judgment for PEC on an implied contract theory.

Section 103(a)(1) provides:

(a) *General Rule*—Gross income does not include interest on—

(1) the obligations of a State ... or any political subdivision [thereof] ....

Treas.Reg. § 1.103–1(b) defines obligation:

1. Interest upon obligations of a State ....

(b) Obligations issued by or on behalf of any State or local governmental unit

1. This regulation provided:
 Interest upon the obligations a State, Territory, or any political subdivision thereof, or the District of Columbia is exempt from the income tax. Obligations issued by or on behalf of the State or Territory or a duly organ-

ized political subdivision acting by constituted authorities empowered to issue such obligations, are the obligations of a State or Territory or a political subdivision thereof. Treas.Reg. § 39.22(b)(4)–1 (1956).

by constituted authorities empowered to issue such obligations are the obligations of such a unit.

This regulation or its substantial equivalent has been in existence since 1918. *See* Treas.Reg. 45, Art. 74 (1920 ed.). Because this regulation defines "obligation" as that word is used in I.R.C. § 103(a)(1), it is an interpretative regulation. In dealing with the validity of an interpretative treasury regulation, the Supreme Court has held: "[I]t is fundamental, of course, that as 'contemporaneous construction by those charged with administration of' the Code, the Regulations 'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes,' and 'should not be overruled except for weighty reasons.'" *Bingler v. Johnson,* 394 U.S. 741, 749–50, 89 S.Ct. 1439, 1444–45, 22 L.Ed.2d 695 (1969) (quoting *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948)). *Accord, Long v. United States,* 652 F.2d 675, 678 n. 7 (6th Cir.1981). The court in *Bingler* also noted:

> [W]e do not sit as a committee of revision to perfect the administration of the tax laws .... In this area of limitless factual variations, "it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments."

*Id.* 394 U.S. at 750–51, 89 S.Ct. at 1445 (*quoting United States v. Correll,* 389 U.S. 299, 306–07, 88 S.Ct. 445, 449–50, 19 L.Ed.2d 537 (1967)).

■ Whether this regulation precludes interest exclusion under Section 103(a)(1) when transactions were not *authorized* under state law is a question of first impression. The regulation, however, clearly requires that state authorities have the power under state law to *issue* obligations. It follows then that if that power is not exercised in accordance with applicable state law, an unauthorized exercise of the state's borrowing power results, which in our view violates the plain terms of the regulation that obligations be issued by *"constituted authorities empowered* to issue such obli-

gations." (emphasis added.) Such an interpretation of the regulation is consistent with the purpose of I.R.C. § 103(a)(1). In *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 55 S.Ct. 50, 79 L.Ed. 211 (1934), the Supreme Court discussed the purpose of excluding interest on governmental obligations from gross income:

> It is clear from a consideration of the entire section and of the subject matter that the purpose of Congress, in thus excluding from gross income interest upon such obligations, was *to aid the borrowing power* of the federal government by making its interest-bearing bonds [or notes] more attractive to investors .... The scope of the word "obligations" as there employed must be narrowed accordingly, and *not extended to include interest upon indebtedness not incurred under the borrowing power* ....

*Id.* at 87, 55 S.Ct. at 51 (citations omitted) (emphasis added).

The court in *Fox v. United States,* 397 F.2d 119, 122 (8th Cir.1968) (emphasis added), specifically discussed the purpose of § 103(a):

> [The exclusion under § 103(a)] reflects a fundamental long-standing policy of Congress that the federal government shall not impose any restraint on the borrowing power of the states or their political subdivisions for public use or benefit. The legislative history clearly indicates that the purpose of the exclusion is to permit state and local governments to obtain capital at a low rate of interest. *Intrinsic to the statutory exclusion of interest on governmental obligations is the requirement that the obligation be incurred in the exercise of the state's (or political subdivision) borrowing power.*

Although the Magistrate found that the purpose behind the § 103(a) exclusion was well served in the instant case, it is clear from these cases discussing the purpose of that exclusion that the courts have recognized as an initial matter that the interest must be incurred through the exercise of

state's borrowing power. Unauthorized exercise of such power would not invoke the Section 103(a)(1) exemption even when there is a reasonable probability that unauthorized contracts would be upheld by a state court on an implied contract theory. To adopt PEC's argument would strain the meaning of "borrowing power" and the regulation *requiring* that constituted authorities be *empowered* to issue obligations. Moreover, this court has recognized that "[t]he statute does not exempt interest paid on every type of contract or legal liability incurred by a municipal corporation ...." *Holley v. United States*, 124 F.2d 909, 911 (6th Cir.) *cert. denied*, 316 U.S. 685, 62 S.Ct. 1276, 86 L.Ed. 1757 (1942). *See also Fox*, 397 F.2d at 122 (The word "obligations" was not intended to extend to every obligation including the payment of interest but only to those obligations that were created in the exercise of the state's borrowing power.) In *United States Trust Co. v. Anderson*, 65 F.2d 575 (2d Cir.), *cert. denied*, 290 U.S. 683, 54 S.Ct. 120, 78 L.Ed. 589 (1933), the court further explained:

> There is no doubt that the clause exempting from taxation "obligations of a State ... or any political subdivision thereof" may be so interpreted as to embrace almost anything which a state or municipality is bound to pay and may thus exempt income which is within the taxing power of the United States. The question is how broadly the word "obligations" is to be construed and just what income is covered by the exemption.
>
> In determining the scope of the word we must bear in mind the settled rule of construction that "tax exemptions are never lightly to be inferred" (*Heiner v. Colonial Trust Co.*, 275 U.S. [232] at page 235 [48 S.Ct. 65 at page 66, 72 L.Ed. 256] ...) and will not be applied to a particular case unless granted in the statute in plain terms [citations omitted].

> \* \* \* \* \* \*

> It seems manifest, not only because of the objects sought to be obtained by the exemptions, but also from the use of the term "issued" ... that the obligations referred to in [the statute] were only such as might be "issued" in the exercise of the borrowing power of the states.

\* \* \* \* \* \*

The decision in *Hibernia Savings & Loan Surety v. San Francisco*, 200 U.S. 310, 26 S.Ct. 265, 266, 50 L.Ed. 495, 4 Ann.Cas. 934, is significant. There the validity of a tax imposed by the state of California as applied to checks or orders signed by the Treasurer of the United States was in question. Section 3701 of the Revised Statutes (31 USCA § 742) exempted "stocks, bonds, Treasury notes, and other obligations of the United States ... from taxation by or under State ... authority." While the Supreme Court held that such checks were "obligations of the United States," it determined that they did not come within the exemption. Though the decision does not govern the present case, it shows that the word "obligations" in an exemption clause is to be construed in the light of the general purposes of the exemption and is not necessarily all-embracing.

*Id.* at 577, 578, 579.

Under the foregoing authority, and giving appropriate meaning to Treas.Reg. 1.103–1(b), we hold that the Section 103(a)(1) exclusion is not applicable to obligations of a state that may be enforceable but that were not properly authorized under state law. Therefore, the decision of the Magistrate to the contrary is REVERSED.

Our inquiry is not ended, however, with this determination since there is a dispute between the parties as to whether PEC in fact conceded that the transactions at issue violated Tennessee law.

Although PEC stipulated that these transactions "were not approved by the legislative or other governing body of each respective county or city nor by the state director of finance," it did not stipulate that these transactions *required* the approval of these governing bodies.

 The government on appeal recognizes that Tenn.Code Ann. § 5–14–108(m) is applicable to a particular county only after approval by the county governing body or by the voters, *see* Tenn.Code Ann. § 5–14–102 (1980), and that § 54–8–107 is applicable only in a county that creates a county highway department. The government also recognizes, as it must in light of *Newlin, supra,* that it has the burden of proving that the transactions between PEC and the governmental entities were violative of applicable Tennessee law and concedes that it offered no proof at trial on whether the statutes at issue were applicable to the instant action. We conclude that PEC did not concede the illegality of the contracts at issue, and therefore a remand for determination of this factual issue would ordinarily be warranted. PEC, however, argues that this case should not be remanded because "the trial court's decision on cross-motions for summary judgment, based on a stipulated record, should be treated as a decision after a trial; and there is no basis to reopen the evidence to allow the government a second bite at the apple." (Letter Brief at 5.)

The cases relied upon by PEC in support of this contention, *see, e.g., Starsky v. Williams,* 512 F.2d 109 (9th Cir.1975) and *Vetter v. Frosch,* 599 F.2d 630 (5th Cir.1979), however, are inapposite because they dealt with a situation where sufficient evidence had been submitted to the trial court for it to rule on an issue of fact; thus, the cases were actually treated on the merits rather than under summary judgment. In essence, these cases stand for the proposition that a trial judge can decide disputed issues of fact even when the case is styled as one under summary judgment. In the instant case, the record contains insufficient evidence to determine whether the contracts at issue violated Tennessee law, and the government has the burden of proving such violations.

The situation here presented is similar to that in *Blum v. Schuyler Packing Co.,* 508 F.2d 881 (8th Cir.1974), where the parties submitted stipulated facts to the district court for determination of "[t]he legality under the provision of the Fair Labor Standards Act of 1938 of paying employees on a computed gang time basis rather than on the basis of the time on their individual time cards ...." *Id.* at 882. The district court *sua sponte* rendered summary judgment for defendants on the basis that plaintiffs had not met their burden of proof under the Act.

On appeal, the court noted that the parties had made the following stipulation:

Because of their inability to reach agreement on certain factual details, the parties have purposely left ambiguities in this Stipulation of Facts to enable each party to argue its version of those factual details in its brief. However, the parties will supply the court with such additional information as it shall request.

*Id.* at 882–83.

The court then held:

This is not a case where there is no genuine issue of material fact. Therefore, rendering summary judgment on the record, which consisted of an incomplete stipulation, was error.

This Court is of the opinion that the record is insufficient to grant the requested relief to plaintiffs or to defendants. The parties should be given the opportunity to present evidence on the facts which have not been agreed upon or to present additional stipulations. *Williams v. Chick,* 373 F.2d 330 (8th Cir.1967).

It is apparent that the parties sought by the submission of the stipulation to have the district court rule that a "gang time" method of computing compensable time was either valid or invalid, per se, under the Act. The district court properly held, in its memorandum opinion, that such a ruling could not be made. The court should have stopped there and required the parties to submit evidence or additional stipulations on the question of whether the "gang time" method, as used in this particular case, was in violation of the Act. However, the court went on to rule against the plaintiffs on

the burden of proof issue. This, in effect, resulted in a holding that, since the plaintiffs were unable to get the defendants to stipulate to certain facts at issue in the case, they failed to carry their burden of proof. The stipulation did not contain enough facts for the district court to grant summary judgment in this case; therefore, it was error to do so. *Id.* at 883. See also *Bank of America Trust & Savings Assn. v. United States,* 317 F.2d 859 (9th Cir.1963), where the Ninth Circuit reversed and remanded a case that had been decided by the district court in the government's favor on stipulated facts. On appeal, the court found that the stipulations did not show the "exact nature of Edmondson's [defendant-bank customer's] liability to the bank under the conditional sales contracts ...." *Id.* at 861. The court concluded, "[We are] of the opinion that the stipulation just does not tell enough 'who, what, when, where and how' for the trial court or this court to make a definitive ruling." *Id.* It therefore remanded for proceedings on this issue.

As this court noted in *United States v. Articles of Device,* 527 F.2d 1008, 1011 (6th Cir.1976): "The function of a motion for summary judgment is not to permit the court to decide issues of fact, but solely to determine whether there is an issue of fact to be tried." In this action, the Magistrate was in error in finding that there was no material issue of fact on the question of the legality of the contracts. We find that the parties in this action should be given the opportunity to present evidence on the question: Were the contracts in violation of state law or undertaken without the appropriate approval of constituted authorities empowered to issue such obligations?

We also find that the Magistrate correctly denied PEC's application for attorney's fees, pursuant to 28 U.S.C. § 2412(d)(1)(A), which provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The Magistrate denied PEC's application on the following basis:

[E]arlier cases [dealing with I.R.C. § 103(a)(1)] were resolved without a finding of unlawful act on the part of the political subdivisions involved, and the possibility was left open that, had the transactions been found illegal, the taxpayer might not have been entitled to the tax credit.

The instant action, in which certain irregularities on the part of the various political subdivisions were stipulated, provided an ideal vehicle for reaching a decision on what was still an open question. For this reason, even though the government may have been unlikely to prevail, it was substantially justified in defending the action.

■ Although we have held that the Magistrate erred in finding that PEC had stipulated to the illegality of the contracts at issue, the possibility was still left open that the Magistrate would have independently found the contracts illegal and denied PEC the tax credit. For this reason, we find that the government was substantially justified in defending the action. Moreover, Section 2412(d)(1)(A) provides that a court shall award fees only to a "prevailing party." PEC is no longer the prevailing party in light of our decision to reverse and remand the Magistrate's judgment. *See Estate of Curry v. United States,* 706 F.2d 1424, 1433 (7th Cir.1983).

Accordingly, we hereby REVERSE and REMAND this action to the Magistrate for further proceedings consistent with this opinion.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

The interest payments involved here were interest payments made on fully executed written contracts for the sale of ma-

chinery and equipment to a number of county and municipal corporations in Tennessee. Unfortunately for the taxpayer, in a number of instances the county or city purchasing agents had not secured approval of the county or city authorities (county judge or chairman of the county court or city ordinance) as required by various Tennessee statutes or private acts. Had these contracts been processed appropriately and received the required approval the government concedes that the interest payments would have been exempt. Despite the lack of required approval, however, the obligations created by these contracts were enforceable under Tennessee law. Because the payments at issue here were therefore interest on obligations of government entities under the plain meaning of I.R.C. § 103(a)(1), I dissent.

Under Tennessee law when a contract with a county or city which was not properly approved has been fully performed by the other party, there is an agreement implied in law according to the exact terms of the original agreement as long as the terms were fair and reasonable. *See Keenan v. City of Trenton*, 130 Tenn. 71 (1914); *Land Co. v. Jellico*, 103 Tenn. 320 (1899); *Trull v. City of Lobelville*, 554 S.W.2d 638 (Tenn.Ct.App.1976); *Carter County v. Williams*, 28 Tenn.App. 352, 190 S.W.2d 311 (1945). Recovery is not limited to the benefit accrued by the city, but is granted according to the contract terms. *Trull v. City of Lobelville, supra.* It is therefore apparent that PEC could have enforced its contracts at any time after it had performed if one of the counties or cities had attempted to renege.

In response the government cites *McDonald v. Scott County*, 169 Tenn. 374, 87 S.W.2d 1019 (1935), and *Carter County v. Williams, supra,* for the proposition that a government agent is not bound by an agent's acts beyond the scope of his authority. These cases are inapposite. *McDonald* dealt with acts that were beyond the county's authority to do in any form, rather than procedural mistakes as are present here. This distinction was found crucial in *Carter County v. Williams, su-*

*pra,* which held that agreements would not be implied in law for acts entirely beyond the city's authority, but would be implied in law to cure procedural defects such as lack of proper approval. The *Carter County* court found that the city would not be bound only in the sense that no legal contract would arise; the same court enforced the implied contract and gave recovery against the city.

The majority reasons that the governmental units' obligations are limited to the benefits conferred on them, and that there consequently is no obligation to pay the interest. However, in *Trull v. City of Lobelville*, 554 S.W.2d at 642, the court enforced "an implied contract in terms identical with those of the informal contract under which the parties acted." Here, the contract terms agreed upon provided for interest. In any event, this argument begs the question. I.R.C. § 103(a)(1) applies to "interest on the obligations" of a governmental unit; it does not require that the interest itself be an obligation.

Under Tennessee law the governmental units were obliged to pay for the equipment and to pay the interest. PEC could have enforced those obligations in a Tennessee court. A definition of "obligation" that excludes these debts seems to me to be inconsistent with the plain meaning of the statute as well as the purpose of the exclusion.

Once we accept the proposition that interest on ordinary contracts is excludable it should not matter whether the state enforces that obligation on the basis of an authorized contract or on the basis of a contract implied in law. In each instance the vendor of the equipment has extended credit to the state or its subdivision believing that the interest it receives will be exempt from tax, thus reducing the rate the vendor will demand. It would place an enormous, if not impossible, burden on the vendor to determine in each instance that the state, county, or city purchasing agent had complied with all of the steps required by voluminous laws and ordinances. It would re-

quire a lawyer's opinion in every case to determine whether all procedural steps had been taken on the part of the state, county, or city before the vendor could know that credit could be offered at a reduced rate because the interest was exempt from tax. Only the largest vendors could afford the cost of such legal opinions.

As a practical matter it would be impossible to investigate which interest payments had been made under contracts properly approved and which had not. Many thousands of contracts are entered into each day by states, counties, and cities. This may be why this is the first case in which the Internal Revenue Service has taken the position it does here.[1] There is no claim here that the taxpayer knew of any irregularities in the manner in which these contracts were let. The government argues that the exemption's purpose of enabling states to borrow at the lowest possible interest rates would be frustrated by a ruling in PEC's favor, since then unauthorized officials, who the government claims do not have the expertise to determine the lowest available rates, would be allowed to act for the state. This argument implicates the state policy expressed in its statutes regulating local governments, not the federal policy expressed in I.R.C. § 103. The Magistrate's policy analysis makes much more sense: "It would not further this purpose [I.R.C. § 103's purpose of encouraging easy credit for states] to make the very inducement (the tax exclusion for interest payments) vulnerable to some error on the part of the purchasing agent, presumably outside the control of the seller."

There remains the regulation:

Obligations issued by or on behalf of any State or local governmental unit by constituted authorities empowered to is-

sue such obligations are the obligations of such a unit.

Treas.Reg. § 1.103–1.

I would hold this regulation inapplicable to ordinary contracts. Until 1937 the Commissioner took the position that "obligations" of a governmental entity included only securities and bonds and not ordinary contracts. In *Kings County Development Co. v. Commissioner*, 93 F.2d 33, 35 (9th Cir.1937), *cert. denied*, 304 U.S. 559, 58 S.Ct. 941, 82 L.Ed. 1527 (1938), the Ninth Circuit reversed a holding of the Board of Tax Appeals to that effect. The Ninth Circuit held that "[t]o place an interpretation upon the word 'obligation' so as to exclude such ordinary written contracts is too narrow to be either practical, just, or within the ordinary meaning of the words of the statute ...." The government acquiesced in this proposition when it acquiesced in *Newlin Machinery Corp. v. Commissioner*, 82 T.C. 837 (1957), which held interest on contracts for the purchase of equipment exempt.[2]

The regulation was written[3] before the Ninth Circuit held that obligations included ordinary contracts, and at a time when the IRS took the position that the interest was exempt only if the governmental entity had borrowed money through issuance of securities or bonds. The regulation's language is confined to such instances since it speaks of obligations "issued by" governmental units. Contracts, whether authorized or not, are not "issued."

It should be noted that the language of the regulation itself does not directly require that the transaction be *authorized* under state law, but rather requires that the obligation be issued "by constituted authorities *empowered* to issue such obligations." (Emphasis added.) It might be argued that a purchasing agent, who normally enters into contracts on behalf of a

---

**1.** The original challenge to the interest payments here was that the transactions were leases and the payments were not interest. The government has abandoned that claim.

**2.** *Newlin* does not answer the problem we face here since in *Newlin* the Tax Court presumed

that the governmental unit's actions were legal and had the necessary approval in the absence of proof to the contrary.

**3.** The pertinent language of the regulation has remained substantially the same since 1918.

governmental unit, is an authority empowered to issue such obligations even if a particular obligation is not authorized because statutory procedures for approval by a county or city legislative body were not followed. The regulation might therefore be construed to allow an exemption for the interest at issue here. Rather than adopt such a convoluted construction, I would merely hold that the regulation is simply inapplicable to the expanded and acquiesced-in definition of obligations as including ordinary contracts.

The obligations in this case were obligations of governmental entities. The interest paid was entered on those obligations and therefore exempt.

Accordingly, I dissent.

Cudahy, Circuit Judge, filed concurring opinion.