CARTER COUNTY, Complainant, Appellee, v. CITY
OF ELIZABETHTON, Defendant, Appellant.—287
S. W. (2d) 934.

Eastern Section. November 8, 1955.

Petition for Certiorari denied by Supreme Court, February 3, 1956.

Roy C. Nelson, of Elizabethton, for appellant.

E. M. Johnston, Guy O. Ferguson and Lloyd G. Shell, all of Elizabethton, for appellee.

McAMIS, P. J.   This suit was instituted by Carter County against City of Elizabethton, a municipal corporation with situs in Carter County, to recover the sum of $10,260.80 alleged to be owing by the City under a resolution of its Board of Commissioners of February 15, 1951. The Chancellor awarded a recovery and the City of Elizabethton appeals.

The bill alleges that in December, 1950, the complainant issued bonds in the aggregate amount of $750,000 and that on February 15, 1951, the Board of Commissioners of the City of Elizabethton by resolution "agreed to aid

and assist Complainant in the repayment of the bonds'', in the amount of $10,260.80 annually, out of its capital outlay fund received from the State of Tennessee; that two of these installments for the years 1952 and 1953 had been paid but that, although its outlay fund exceeded the amount of the installment for the year 1954, the City had defaulted and refused to pay for that year. (Although not so alleged in the bill the record shows that the bond issue was for school building purposes.) The bill further alleges that, under the terms of the resolution, complainant was required to pay to the City a portion of the amount realized from any future special levy or bond issue for school building or repairing purposes and that complainant had complied with the resolution by paying to the City in excess of $2,000 from the ''Unaka Hi'' levy which amount, except for the resolution would not have been paid to the City and that complainant had otherwise fully complied with the terms of the resolution.

The City answered the bill alleging that the County had breached the terms of the resolution by failing to pay over to it, as required, any portion of a bond issue of July 8, 1953, in the sum of $90,000; that under Code Section 2563 the City was entitled to receive out of the proceeds of any County bond issue for school purposes and particularly the $750,000 bond issue above mentioned a certain percentage based upon scholastic population and ''that any act, private act, contract, resolution, or other agreement which suspends or undertakes to suspend the general laws of the State is void''; that the resolution in question was beyond any power of a municipality, express or implied, and, therefore, ultra vires and void and, in effect, that if sustained the resolution would place a double tax burden upon taxpayers within the City since they must contribute to the repayment of

county bonds on a like basis with those residing outside the City and, at the same time, support City schools.

The Chancellor found that the $90,000 bond issue was not for school building purposes but was an issue of funding bonds to cover an accumulated deficit in the Department of Education of the County and, therefore, was not within the terms of the resolution. For this reason it was held that there was no breach of the resolution by the County excusing the City from the performance of its terms. We concur in this finding.

The Chancellor further held that the resolution was a valid and binding obligation of the City under Code, Sec. 10268.14 providing:

"The quarterly county court of any county and the chief legislative body of any municipality that lies within the boundaries of said county are hereby authorized and empowered to enter into any such agreements, compacts, or contractual relations as may be desirable or necessary for the purpose of permitting said county and said municipality to conduct, operate, or maintain, either jointly or by one agency for the other, desirable and necessary services or functions, under such terms as may be agreed upon by the two agencies."

Unless saved by the terms of this statute, a question reserved for consideration hereinafter, it is our opinion that the resolution is without adequate supporting consideration, is ultra vires and violative of State policy relating to the proper apportionment of funds derived from county bond issues for school building purposes.

Code Section 2563 provides:

"In counties having a city or cities operating schools independent of said county, the trustee of said county shall pay over to the treasurer of said city that amount of said funds which shall bear the same ratio to the entire

amount arising from the provisions of this article as the scholastic population of said city or cities bears to the entire scholastic population of said county; provided, however, that the said funds paid over to the said city treasurer shall be kept separate from all other funds in the manner and for the purposes herein provided for said county funds to be used.''

After appropriating for capital outlay the sum of $6,300,000 per annum to be distributed among the several counties for the purchase and improvement of school sites, for major repairs to buildings, and for building and transportation equipment, Code, Sec. 2417.160 provides:

''The funds received by the county trustee of a county as authorized by this section shall be apportioned by the county trustee between the county and any cities and special school districts therein operating a system of public schools, on the basis of the number of teaching positions allowed and maintained in grades one through twelve during the preceding school year in such county, and in the respective cities and special school districts therein operating a system of public schools * * *.

''The amount apportioned to the respective counties under this section may be used, in the discretion of the county, city or special school district board of education, for the payment of the principal and interest on any bonds or other forms of indebtedness issued by said county, city or special school district for school purposes since July 1, 1947.''

It seems to us apparent that these statutes evince a legislative purpose to make the citizens and taxpayers of municipalities and special school districts the equal beneficiaries of the proceeds of school bond issues and the annual capital outlay appropriations by the State and to avoid the inequities of double taxation of such

property owners who must contribute directly to the support of such municipal and district schools and also to the support of county schools.

It is our opinion that the governing bodies of municipalities have no authority to divest such taxpayers of these rights or to exchange them for the right to participate in uncertain and undetermined future special tax levies which the counties may or may not see fit to make. The effect of the resolution is to assign future benefits of the outlay appropriations to the State while the statute contemplates that such benefits shall be received semiannually and used to meet the educational needs as they develop. Under Code Section 2563, a municipality is entitled to the stipulated portion of all bond issues for school buildings made by the county in which the municipality is located and the alleged agreement was, therefore, without consideration except that the County agreed to allow the City to participate in possible future special levies; and we consider such an agreement by a county of doubtful validity.

To sustain such agreements would defeat the policy and purposes of the controlling statutes above quoted and force the Legislature, in providing for the future educational needs of the State, to deal with a different situation in each county.

In holding the resolution inoperative we are not unmindful of the rule that, under certain circumstances, a municipality may be held estopped to assert the invalidity of a partially executed contract. The rule does not apply, however, where the contract is contrary to public policy or purports to cede right of citizens or embarrass it in the exercise of its governmental functions. Cf. 38 Am. Jur. 203, Municipal Corporations, Sec. 522. In any event, the County has not be injured since it has already

received more than $20,000 from the City while paying the City only about $2,100 from the special levy, "Unaka Hi".

■ It is true the second paragraph of Section 2417.-160 permits the application of capital outlay funds to the payment of principal and interest on bonds issued after July 1, 1947, but, as we read it, the authority to do so relates only to bonds of the county or municipality receiving the funds and, clearly, there is no authority conferred to pledge such funds in advance as has been attempted here.

We come then to the final question of the correctness of the conclusion of the learned Chancellor that the resolution is within the purview of Code Section 10268.14 above quoted. As we have seen, the resolution purports to take away from the taxpayers of the City benefits conferred by the Legislature and, if sustained, that it would defeat the Legislative policy of dealing with municipalities and counties on a uniform and equitable basis. With deference to the learned Chancellor, we do not think the Act relied upon was intended to confer upon municipalities the power to enter into contracts of the nature here involved and thus take from municipal taxpayers benefits conferred by the general school laws of the State.

It results that the decree must be reversed and the suit dismissed. Carter County will pay all costs.

Hale and Howard, JJ., concur.