Larry TRULL d/b/a Larry Trull Construction Co., Plaintiff-Appellee,

v.

CITY OF LOBELVILLE, Defendant-Appellant.

Court of Appeals of Tennessee, Middle Section.

Dec. 30, 1976.

Certiorari Denied by Supreme Court May 31, 1977.

Landis Turner, Keaton, Turner & Peluso, Hohenwald, for plaintiff-appellee.

Robert L. Jones, Columbia, for defendant-appellant.

OPINION

SHRIVER, Presiding Judge.

The Case

This suit involves several utility lines constructed by plaintiff-appellee, hereinafter

referred to as plaintiff or appellee, in the City of Lobelville and this appeal is from a judgment rendered against the City by Honorable Henry Denmark Bell, Circuit Judge, sitting without the intervention of a jury, wherein judgment for $11,805.00 was entered in favor of plaintiff and title to the utility lines in question were vested in the City.

### The Pleadings and the Facts

It is not alleged in the bill but the record shows that defendant City is a municipal corporation chartered under the Uniform City-Manager Commission form of Government, pursuant to Chapter 18 through 23 of Title 6, T.C.A., while the plaintiff is a private contractor engaged in the business of laying sewer, gas and water lines, in addition to other activities as a contractor.

In March, 1973, plaintiff laid a sewer line from the City's existing sewer line to the property of one Tommy Garber and laid a gas line from the City's existing gas line to the property of said Tommy Garber. Both of said lines were within the city limits.

In November, 1973, the plaintiff laid approximately three thousand feet of two-inch water line to the homes of H. A. Hendrix, Jr. and H. A. Hendrix, Sr. North of the city limits of the defendant. The Hendrix line crossed their private property as much as three hundred yards from the public highway and stopped at the home of H. A. Hendrix, Sr., several hundred feet away from the highway, and there is no record of any easement having been granted or recorded with respect to said lines.

The original complaint, filed January 7, 1975, avers that an agreement was made between the plaintiff and the defendant, under which plaintiff agreed to construct the above mentioned sewer line at his own expense on condition that he would be permitted to tap on to the main line of the defendant and would recover his investment by charging tap-on fees to each user on the new line and when he had recovered his investment from these tap-on fees, including a reasonable profit, he would convey the line to the defendant.

It is alleged and the record shows that, pursuant to this agreement, plaintiff constructed the sewer line running from the manhole at the Lobelville Garment plant building, 320 feet up Sixth Avenue West toward State Highway 13 East, which was a 6-inch line and plaintiff's investment therein is alleged to have amounted to $3,360.00, of which amount he had recovered at the time of the filing of the bill only $515.00.

It is further alleged that defendant has reneged on its agreement with plaintiff regarding the sewer line by tapping same to provide service to the residence of one Charles Burcham and by refusing to recognize plaintiff's ownership of the line and his rights in connection therewith.

It is further alleged that at about the time the agreement as to the sewer line was made, plaintiff and defendant also agreed that plaintiff would construct a gas line from the mobile home of Jim Loveless to the mobile home of James T. Garber, and that plaintiff constructed this line, investing $420.10 in same, and it was agreed that he would recover his investment by charging fees to the persons using the line.

It is proper at this point to state that, on cross-examination, plaintiff said that there was no longer any dispute between him and the City with regard to the gas line referred to in the bill of complaint.

In May of 1973, plaintiff and defendant entered into a third agreement under which plaintiff, at his expense, installed a water line about two miles in length, with the understanding that he would be permitted to tap onto defendant's main line and recover his investment by charging fees to users tapping onto this water line. His investment in said line was $12,938.85.

It is averred that defendant has reneged on its agreement with plaintiff with respect to this line by refusing to recognize his rights in connection with same.

It is alleged that defendant's breach of its agreement has caused plaintiff to suffer great damages by preventing him from recovering his investment as agreed upon.

The bill prays for injunctive relief; that plaintiff be awarded damages in the amount of $25,000.00 for defendant's breach of contract and for general relief.

The answer of the City states that none of the current officers of the City of Lobelville have any personal knowledge of the alleged agreements with plaintiff and, therefore, neither admits nor denies same but demands strict proof thereof. It is also denied that the City has breached any agreement or contract with the plaintiff and it is pointed out that the water line involved in this dispute was at one time dedicated to the City by C. C. Cunningham but has been returned to him because of his failure to comply with certain requirements of the City.

It is stated in the answer that defendant is unable to give a detailed answer to the complaint because of a lack of information.

After a full hearing and oral statement of his findings and conclusions by the Trial Judge, the following decree was entered:

### "JUDGMENT

This civil action came on to be heard on the 25th and 26th days of July, 1975 before the Honorable Henry Denmark Bell, Circuit Judge, on the complaint, answer, testimony of witnesses in open court, their exhibits and the entire record.

From all of which the Court finds that plaintiff is entitled to recover from the defendant the sum of $11,285.00 to which shall be added interest at the rate of six percent per annum on $8,104.00 portion of said amount, interest being $520.00, so that the total judgment shall be $11,805.00.

The costs of this civil action shall be paid by the defendant.

All the foregoing of which is hereby ORDERED and ADJUDGED by the Court.

To which action of the Trial Court the defendant duly excepts and prays an appeal to the next term of the Court of Appeals at Nashville, which appeal is hereby granted upon the defendant filing a proper bond and perfecting its appeal as required by law and the defendant is allowed a total of ninety days from the entry of this judgment in which to file its bill of exceptions.

/s/ H. D. Bell
Circuit Judge"

### Assignments of Error

There are twelve assignments of error which it will not be necessary to set out seriatim but they will be discussed by the Court hereinafter.

Counsel for appellant, in his statement of the case, states that the main points raised by this appeal are: (1) Whether appellee must be denied relief due to the appellant City's failure to comply with all the statutory formalities covering contracts by municipalities; and (2) whether *quantum meruit* is a proper basis on which to compensate appellant in this case.

### The Proof and our Conclusions

Counsel for appellant, by the assignments of error, brief and argument, insists that it was error for the Trial Judge to find that there was any contract or agreement between the plaintiff and defendant City other than the City Manager permitting plaintiff to connect to the City's water system and permitting plaintiff to recover his cost from customer tap fees, and that it was error for the Trial Judge to fail to find and hold that defendant City Manager and Commission were without authority to contract except by ordinance passed in three separate official meetings, and that it was error to find and hold that the defendant City ratified the alleged agreements.

The first witness called for the plaintiff was *Mr. Reed DePriest*, a real estate broker in Lobelville, and former member of the City Council of defendant who served four years until sometime in 1973. He testified that he served with Dr. Earl Salhany, Harry Meade, Ray Warren and Ivory May, and that Dr. Salhany was Mayor during the time the witness served on the Council.

He was asked to state in his own words what he knew about an agreement, if any, between the City of Lobelville and Mr.

Trull concerning utility lines that he was to build, and he answered:

"Well, he had equipment that he was capable of stopping leaks and so forth, of using. In this particular case, three of the lines that was in question, the Council agreed to let him put the lines in, that we were financially in bad shape and he agreed to do it."

After an objection was ruled on by the Court, the witness continued:

". . . He agreed to put the lines in on his own, and we were to get the revenue from the water and the gas, which I figured would be important to the City, and that he was to be repaid by charging tap fees to people that did tap on, and get his pay in that manner, and that when he got his pay he would give the lines to the City . . ."

He stated that plaintiff's proposal was discussed and agreed upon at a regular Council meeting in the Fall of 1973.

*The plaintiff*, in the course of his testimony, stated, among other things, that at the time in question, Mr. Redner Bates, the City Manager, approached him and said if plaintiff would lay the line up there, that he could collect the tap fees and the City would pay him for tapping on the main sewer.

With respect to the water line in question, he testified that it was discussed two times in a Council meeting, and further stated:

"They all agreed that as long as it didn't cost them anything that they didn't see anything wrong with it as long as they could collect the revenue off of the water, and they asked me if I would give them the line when I got my money back, and I said, 'Sure, be glad to,' and Mr. Meade (a member of the Council) made the comment that it sounded like a real good deal to him to collect the money because they were in bad need of money."

On cross-examination, he was asked if there was ever any agreement with the City that they would buy the line from him and he answered:

"They took it. They didn't buy it."

There was testimony to the effect that the City, after claiming authority over and possession of the water line, sold one tap for $250.00. He said he did not think they were entitled to it because it came out of his pocket and they did not have a dime invested in the line.

In the old case of *Gaslight Co. v. Memphis*, 93 Tenn. 612, 30 S.W. 25 (1894), the Supreme Court of Tennessee held that a municipal corporation, restricted by its charter to contract in writing, and to create no general liability, is nevertheless liable, upon an implied contract, to compensate a party who has furnished gas for use upon its streets.

In *Land Co. v. Jellico*, 103 Tenn. 320, 52 S.W. 995 (1899), our Supreme Court held that a municipal corporation may be held upon an implied promise for the benefits actually received under an invalid contract for the improvement on its streets, when the contract was fair and reasonable in its terms, and clearly within the scope of the powers of the City Council, who were fully aware of its existence and infirmity, but nevertheless permitted it to go unrescinded and unchallenged, and allowed the other party to it to continue work under it, under the belief that all was satisfactory, and permanent advantage accrued to the City.

In *Keenan v. Trenton*, 130 Tenn. 71, 168 S.W. 1053 (1914), the Court held:

"Where a municipality had power under its charter to purchase an electric light plant, it was liable under an implied promise for the reasonable value so purchased and used by it, though the power was not properly exercised by the City Council and though bonds voted to pay for it were invalid."

In *Carter County v. Williams*, 28 Tenn. App. 352, 190 S.W.2d 311 (1945), our Court held that claims against Carter County for equipment, materials and supplies sold to the County Superintendent of Roads based upon irregularly executed or void contracts which were fully performed in good faith could be recovered under an implied con-

tract by the County to pay for benefits actually received.

The Court further held:

"Where claimant against Carter County for sale of equipment, materials and supplies to the County Superintendent of Roads has no valid express contract because of failure to observe procedural requirements of private act creating the office of Superintendent of Roads in such County and prescribing the duties and seeks to recover on *quantum meruit*, the claimant must assume the burden of showing a benefit commensurate with the claim asserted.

In *Carter County v. City of Elizabethton*, 39 Tenn.App. 685, 287 S.W.2d 934 (1950), this Court recognized the rule that a municipality may be estopped to assert the invalidity of a partially executed contract. To the same effect is 63 C.J.S. Municipal Corporations § 1024b, p. 614.

In 56 Am.Jur.2d, Municipal Corporations, etc., § 526, p. 581, is found the following text:

"The liability of a municipal corporation or political subdivision upon an invalid contract on the basis of estoppel is closely related to liability upon an implied contract. In fact, some cases refer to the law imposing 'an estoppel in the nature of an implied contract.' In accordance with the principles, discussed elsewhere, concerning the application of the doctrine of estoppel generally to municipalities and political subdivisions, a municipal corporation or county may be estopped in the exercise of its contractual powers."

In the same article at § 527, pp. 582, 583, is found the following:

"One of the commonest situations in which the doctrine of estoppel may be applied against a municipal corporation or other political subdivision with regard to the validity of its contracts is that in which the contract is intra vires and not prohibited by law, but where the contracting power of the corporation or subdivision has been irregularly or improperly exercised. The authorities generally hold or recognize that in that situation the municipal corporation or political sub-division may be estopped to deny the validity of the contract. Thus, where a municipal corporation receives the benefit of the performance of a contract, invalid merely for the failure to comply with some formality in its execution not affecting the power of the corporation in the matter, it is thereby estopped to assert the invalidity of the contract. Upon like principle, a municipal corporation may be estopped to assert the invalidity of a contract on the ground of failure to authorize the contract by ordinance, or because the contract was adopted by resolution instead of an ordinance, or because of informality in the proceedings leading up to execution of the contract or the adoption of the ordinance."

■ The evidence in the instant case, including the testimony of Mayor Salhany and former City Manager Bates, clearly shows the assent of the City authorities, including the City Council, and that the rights of the City are not prejudiced, hence, it does not appear just to allow a City to escape its obligation to one who has performed his part of a contract by asserting that it (the City) did not comply with the law in formalizing its action on the minutes of the Council.

Even if such unjust defense should be allowable, the circumstances of the present case estop the City from defending upon grounds of its own dereliction.

Moreover, even if the contract with plaintiff should be invalid upon a technicality (which is not held) and the City should not be estopped to claim the technicality (which is not held), nevertheless, the facts of this case raise an implied contract in terms identical with those of the informal contract under which the parties acted.

Thus, whether by valid contract without infirmity, or by estoppel to plead the infirmity, or by implied contract to substitute for an invalid contract, the results are the same, that is, that the City is obligated to honor the conditions under which it induced or permitted plaintiff to perform the construction heretofore described.

Therefore, the assignments of error wherein appellant asserts error of the Trial

Judge in holding that the agreement was valid and binding are overruled.

■ On the other hand, we find ourselves in disagreement with the judgment of the Trial Court wherein it is held that the plaintiff is entitled to recover from the defendant the sum of $11,285.00, plus interest, for a total judgment of $11,805.00. We are in further disagreement with the judgment that all the rights and interests of the plaintiff held by him in connection with the utility lines described in the complaint are divested out of him and vested in the defendant.

In the first place, the bill of complaint does not assert any agreement by which the plaintiff would be entitled to recover a judgment for the value of the utility line in question. On the contrary, the bill of complaint asserts that an agreement was made between the plaintiff and defendant under which plaintiff agreed to construct the lines at his expense and that he would be permitted to tap onto the lines of the City and would recover his investment by charging tap-on fees to each user of the new lines and, when he had recovered his investment, including a reasonable profit, it was agreed that he would convey the lines to the defendant.

In addition to the allegations in the bill hereinabove referred to, the testimony of the plaintiff, himself, was clearly to the effect that he had entered into an agreement with the City to construct the lines in question at his own expense and that the City would permit him to connect said lines with those already established by the City, which included gas lines, sewer lines, and a water line, and that he would be permitted to charge tap-on fees to prospective customers and, through that method, obtain reimbursement for the expense of installing the lines, plus a reasonable profit, whereupon, he would turn them over to the City.

As hereinabove noted, plaintiff testified on cross-examination that there was no longer any dispute between him and the City regarding the gas line, so that is pretermitted in the determination herein made.

In view of all of the foregoing, we conclude that the plaintiff is entitled to the enforcement of his agreement and that the City be enjoined from interfering with the plaintiff's rights in connection with the water line and sewer line installed by him, which rights include his reasonable control over the lines with the right to collect tap-on fees from all customers seeking the services furnished thereby until he has recovered the actual cost of the installation of said lines, plus a reasonable profit. He is also entitled to recover from the City the $250.00 tap-on fee that the City extracted from one customer.

It results that all assignments charging error in awarding plaintiff a money judgment against defendant City are sustained and all other assignments, except those hereinabove acted upon, are pretermitted.

The cause will be remanded to the Trial Court for the enforcement of this Court's decree and for such other and further proceedings and actions as may be necessary and proper in conformity with this opinion.

The costs of the cause will be taxed to the City of Lobelville inasmuch as it was by the City's action that this suit became necessary.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

TODD and DROWOTA, JJ., concur.