IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 1, 2010 Session

# CHARLES H. BRYSON, ET AL. V. THE CITY OF CHATTANOOGA, ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 06-0284      Howell N. Peoples, Chancellor**

_____

**No. E2009-01101-COA-R3-CV - FILED SEPTEMBER 27, 2010**

_____

Before November 4, 1986, members of the Chattanooga Police and Fire Departments were allowed to buy back retirement credit for time served while employed in other departments within the City of Chattanooga.  On November 4, 1986, a city-wide referendum was passed which established a cut-off date of June 1, 1987, in which to buy back these retirement credits.  Almost nineteen (19) years later, this lawsuit was brought by fifteen (15) police officers ("Plaintiffs") against the City of Chattanooga (the "City") and the Chattanooga Fire and Police Pension Board (the "Pension Board").  Plaintiffs claimed, among other things, that the 1986 referendum unconstitutionally deprived them of a property right.  Plaintiffs sought a declaration that they be allowed to buy back retirement credits for time served in other City departments.  The Trial Court concluded that the statutes of limitation had run on all of the claims, with the exception of some of the plaintiffs' equal protection claim.  The Trial Court then concluded that Defendants were entitled to summary judgment as a matter of law as to the one timely claim.  Plaintiffs appeal, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

Bryan H. Hoss, C. Leland Davis, and Whitney Durand, Chattanooga, Tennessee, for the Appellants, Charles H. Bryson, Randall Vincent Dean, James Terry Marlin, Paul W. Lee, Jr., Randy W. Dunn, Francene H. Fleming, Anderson G. Hass, Danny B. Hill, Thomas B. Kennedy, Thomas D. McKinney, Sully Batts, Kimberly K. Miller, Kenneth D. Phillips, Kimberly Reavley, and Bryan D. Moody.

Christopher A. Crevasse, Neil A. Brunetz, and Robert F. Parsley, Chattanooga, Tennessee, for the Appellee, Chattanooga Fire and Police Pension Board.

Michael A. McMahan, City Attorney, and Valerie L. Malueg, Assistant City Attorney, for the Appellee, City of Chattanooga.

## OPINION

### Background

Plaintiffs are current and former members of the Chattanooga Police Department. In April of 2006, Plaintiffs filed this declaratory judgment action seeking a declaration that they are allowed to buy back retirement credit for time spent employed in other City departments. Plaintiffs sued the City and the Pension Board. According to the complaint:

> Prior to November 4, 1986, the Charter of the City of Chattanooga allowed Chattanooga Police Department and Fire Department officers to buy back retirement credit for time served in other city departments. Section 13.75 of the Charter of the City of Chattanooga provided the following:

>> In computing the time served by an applicant for a pension, if such applicant has been employed in other city departments of the City of Chattanooga and has been employed as much as eight (8) years in the department of fire and police, such applicant shall be given credit for the time served in other departments; provided, however, that such member shall pay into the pension fund the necessary amount to cover the years for which he shall be given credit, and if he fails to pay such amount into the fund, he shall be treated as a new employee when he entered the fire and police department.

> This provision allowed police officers to buy back retirement credit for time spent in other city departments.

This provision provided certain contractual rights for the benefit of these officers in their retirement credit for time spent in other city departments.

On August 19, 1986, the Chattanooga City Council adopted an adverse Amendment to § 13.75 of the Charter of the City of Chattanooga. The adverse Amendment was approved at referendum on November 4, 1986. As amended, Section 13.75 of the Charter of the City of Chattanooga provided the following:

> In computing the time served by an applicant for a pension, those applicants who were employed as much as eight (8) years in the police or fire departments on the date on which this Act is approved may receive credit for the time served in such other departments of the City of Chattanooga; provided, however, that any such person who elects to receive credit for time served in such other departments of the City, shall pay into the Firemen's and Policemen's Pension Fund *before June 1, 1987*, such amounts that would have been contributed by both the employee and the City into the Firemen's and Policemen's Insurance and Pension Fund for the years served in such other departments at six percent (6%) interest, compounded annually from the end of each year of such uncredited service.

This adverse Amendment created a date, June 1, 1987, for employees to pay into the Pension fund for the retirement credit that they elect to take towards their retirement. This adverse Amendment altered significantly the previous provision.

Following this adverse Amendment, the City of Chattanooga and The Chattanooga Fire and Police Pension Board, have permitted several other fire and police officers to exercise buy back rights after June 1, 1987.

Each of the Plaintiffs reasonably relied on the Charter of the City of Chattanooga prior to November 4, 1986, to organize their financial affairs and retirement plans. Each of these

Plaintiffs have petitioned both the City of Chattanooga and the Chattanooga Fire and Police Pension Board to allow them to buy back their retirement credits as permitted prior to the adverse Amendment. Both the City of Chattanooga and the Chattanooga Fire and Police Pension Board have refused.

Prior to the ordinance of August 19, 1986, neither the City of Chattanooga nor the Board gave any indication whatsoever to the Plaintiffs that they would no longer permit the Plaintiffs to purchase credit for time served in other city departments as permitted pursuant to the Charter of the City of Chattanooga . . . prior to November 4, 1986.

These Plaintiffs are respectfully asking this Court pursuant to the Tennessee Declaratory Judgment Act to determine their rights pursuant to the City Charter and the Fire and Police Pension Board. More specifically . . . , these Plaintiffs are seeking relief from this Court to declare the adverse Amendment unconstitutional . . . and allow them to purchase their retirement credit for time spent in other city departments prior to becoming police officers in Hamilton County . . . . (original paragraph numbering omitted; emphasis in the original)

Plaintiffs claimed the amendment unconstitutionally violated both vested and unvested contractual rights, amounted to an unconstitutional taking of their property rights without just compensation, and was an ultra vires act by the City. Plaintiffs further alleged violations of due process and equal protection of the law.

Defendants answered the complaint and denied any liability to Plaintiffs. Defendants admitted that the charter was amended, but denied any constitutional violation. Defendants averred that the Amendment properly was submitted to and approved by the voters. Defendants further claimed that all Plaintiffs' alleged causes of action were barred by laches and the applicable statutes of limitation.

Plaintiffs filed a motion for summary judgment, and an affidavit from each plaintiff was filed. In these affidavits, which are virtually identical, Plaintiffs state that in 1986, they did not know that the Pension Board was considering revising the provision which allowed them to purchase credit for time served in other departments. Plaintiffs went on to state that: (1) they did not know the Pension Board voted on May 8, 1986, to eliminate the

right to purchase credit for time served in other departments; (2) they did not know that on August 19, 1986, the Chattanooga City Commission called for a referendum with regard to whether to change the provision allowing them to purchase credit for time served in other departments; (3) they did not know the November 4, 1986, referendum on the ballot involved the elimination of the provision allowing them to purchase credit for time served in other departments; and (4) they did not know that there was a June 1, 1987, deadline for purchasing credit for time served in other departments.[1] Plaintiffs further asserted that during the six year period following the June 1, 1987 deadline, a total of twelve police officers were offered the opportunity to purchase credit for time served in other City departments, and eleven of the twelve officers did so, and that this amounted to a violation of the equal protection clause because Plaintiffs were not allowed this same opportunity.

Defendants also filed a motion for summary judgment. Defendants claimed that the undisputed material facts established that the amended ordinance was validly approved by the voters and that Plaintiffs had failed to establish that they met the requirements needed to purchase credit for time served in other departments. Defendants filed deposition transcripts from numerous witnesses. Among other things, Defendants asserted that the reason the City established a deadline for allowing policemen and firemen to buy back retirement benefits was because that provision was negatively affecting the actuarial soundness of the retirement fund.

Following a hearing on the competing motions for summary judgment, the Trial Court entered a thorough forty-three page Memorandum Opinion. The Trial Court ultimately denied Plaintiffs' motion for summary judgment and granted Defendants' motion for summary judgment. In its Memorandum Opinion, the Trial Court reviewed the procedural and factual history of the case and the events giving rise to this lawsuit. According to the Trial Court:

> Until November 4, 1986, the Chattanooga City Charter ("the Charter") provided some members of the Chattanooga Fire and Police Insurance and Pension Fund ("the Fund") the opportunity to receive pension credit for the years they worked for the City of Chattanooga ("the City") in positions outside of the fire and police departments. Chattanooga, Tenn., City Charter § 13.75 (1980). To be eligible for such credit, pension applicants had to have worked in the fire or police department

---

[1] Even though Plaintiffs claimed they did not know about the referendum, the entire ballot detailing the proposed amendment was published in both the *Chattanooga Times* and the *Chattanooga News-Free Press* prior to being voted on and passed by the voters.

for "as much as eight (8) years," and had to pay "into the pension fund the necessary amount to cover" those years for which the applicant wished to receive police and fire pension credit. *Id*. The Chattanooga Fire and Police Pension Board ("the Board"), the body that administers the Fund, interpreted the phrase "as much as eight (8) years" to mean that "individuals had to first work eight years as a firefighter or police officer" before they were eligible to receive pension credit for years they worked in other departments. . . .

On August 19, 1986, however, the Chattanooga City Commission ("the Commission") approved Ordinance 8688 ("the Ordinance"), which amended § 13.75 of the Charter to the effect that members of the Pension Fund would no longer be allowed to purchase fire and police pension credit for past municipal employment. . . . According to the amendment, pension applicants who worked "as much as eight (8) years in the police or fire departments" and wished to receive fire and police pension credit for time worked in other City departments had to purchase such credit, at a rate which now included a 6% interest fee, prior to June 1, 1987. Charter § 13.75 (1986). On November 4, 1986, the residents of the City voted in a popular referendum to approve the Ordinance so amending the Charter. . . .

Despite the amendment's explicit language setting a June 1, 1987, deadline for purchasing pension credit for years worked in other departments, the Board's attorney advised the Board that it could consider any Fund member's written request to purchase pension credit dated before June 1, 1987, as timely. . . . After June 1, 1987, the Board allowed twelve (12) Fund members to purchase pension credit for years worked in other departments on the basis that these members both met the eight year employment requirement – as interpreted by the Board – and submitted written requests prior to June 1, 1987, to purchase the pension credit. . . .

Plaintiffs are members of the Fund who are either recently retired from employment with the City, or are nearing retirement age. (Compl. at ¶¶ 19, 20.) Plaintiffs claim they

"reasonably relied on" the pre-1986 Charter in planning for their retirement, and duly have asked the City and the Board to allow them to purchase pension credits for years worked in other City departments. (Compl. at ¶ 29.) Plaintiffs allege that the City and the Board have denied their requests to purchase pension credit despite the fact that the Board allowed twelve other Fund members to do so after the June 1, 1987, deadline. (Compl. at ¶ 29.)

Plaintiffs filed suit against the City and the Board (collectively "Defendants") on April 4, 2006, under the Tennessee Declaratory Judgment Act, requesting the court to declare the Ordinance of 1986 void as unconstitutional under both the Tennessee and federal constitutions. Specifically, Plaintiffs allege the Ordinance violates their due process and equal protection rights, impairs their vested and unvested contract rights, constitutes an *ultra vires* act, and impermissibly takes their property rights without just compensation. (Compl. at ¶¶ 32-69.) On May 10, 2006, Defendants filed their Answer in which they admitted many of Plaintiffs' factual allegations, but denied that these allegations constituted any wrongdoing. Defendants also raised a number of affirmative defenses, including laches and statutes of limitation. On July 7, 2008, Plaintiffs filed their Motion for Summary Judgment, and on August 11, 2008, Defendants filed their Motion for Summary Judgment. On September 29, 2008, both Plaintiffs and Defendants filed responses to each others' motions. . . .

[The issues are whether] the actions of the City and the Board violated Plaintiffs' constitutional rights as alleged in Plaintiffs' Complaint, and whether Plaintiffs' suit is barred by any applicable statute of limitations.

\* \* \*

Defendants argue that all of Plaintiffs' claims are barred by any applicable statutes of limitations. . . . Defendants argue that all of Plaintiffs' constitutional claims are barred by a one year statute of limitations pursuant to Tenn. Code Ann. § 28-3-104 and applicable federal precedent . . . . Defendants [further]

argue that even if the Court applied the ten year catch-all statute of limitations in Tenn. Code Ann. § 28-3-110(3), the statute started to run on June 1, 1987, at the latest and therefore Plaintiffs in 2006 were too late to file suit.

Plaintiffs, on the other hand, argue that the only statute of limitation that is applicable in this case is the ten year catch-all in Tenn. Code Ann. § 28-3-110(3), and that this statute did not start to run until the Plaintiffs sought to access their pension benefits upon retirement and were denied the opportunity to purchase pension credit by the Board. . . . [Plaintiffs further] argue that the one year statute of limitations is limited to tort cases involving "compensatory type damages." . . . Plaintiffs duly assert that because "[t]here is no category regarding pension legislation or employment benefits," their cause of action "falls into the general catch-all category" in Tenn. Code Ann. § 28-3-110(3). . . . In the alternative, Plaintiffs suggest that the six year statute of limitations pursuant to Tenn. Code Ann. § 28-3-109(a)(3) for actions in contract applies. . . .

The Trial Court then discussed the applicable statute of limitations for a cause of action brought pursuant to 42 U.S.C. § 1983 for the deprivation of civil rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the federal constitution. The Trial Court initially determined that all claims brought pursuant to § 1983 had a one year statute of limitations. The Trial Court then concluded that the statute of limitations began to run when Plaintiffs knew or had reason to know of the injury. The Trial Court added that a plaintiff has reason to know of an injury if he would have discovered it through the exercise of reasonable diligence. The Trial Court stated:

In the present case, Plaintiffs allege that Defendants deprived them of their Due Process and Equal Protection rights under the United States Constitution in violation of § 1983. The relevant Charter provisions were amended via the adoption of an Ordinance by popular vote in a city-wide referendum on November 4, 1986, nearly twenty years before Plaintiffs filed suit. Most of the Due Process defects Plaintiffs allege occurred on or before this date. The November 4, 1986, general election did not occur in secret – indeed, the entirety of the Ordinance was published on the election ballot – and Plaintiffs had as

-8-

much constructive notice of this election as every other Chattanooga voter.

Likewise, Defendants' allowance of some officers to purchase pension credit after the June 1, 1987 deadline occurred in the late 1980s and early to mid-1990s, well over ten years prior to Plaintiffs' initiation of the present suit. In fact, the latest date on which the Board is alleged to have denied any of Plaintiffs the opportunity to purchase pension credit was March 8, 2004. . . . Plaintiffs therefore had ample opportunity to gain the actual and constructive knowledge of their causes of action over the past twenty years. Regardless of whether the court dates the accrual of Plaintiffs' § 1983 cause of action in 1986, 1987 or some subsequent year in which Defendants granted pension purchase rights to a police officer or firefighter on the basis of a pre-1987 written request, or conversely denied one of Plaintiffs' requests, Plaintiffs' § 1983 claims do not satisfy the one year statute of limitations and are therefore time barred.

Next, the Trial Court discussed the applicable statute of limitations for the remaining claims; specifically, impairment of contract rights, unconstitutional taking without just compensation, violation of equal protection of the law, and a claim that the Commission's amending of the ordinance was an *ultra vires* act. Because neither Plaintiffs nor Defendants argued that anything other than a ten year statute of limitations applied to these claims, the Trial Court proceeded upon the assumption that the ten year statute of limitations in Tenn. Code Ann. § 28-3-110(3) applied. Based on this assumption, the Trial Court then discussed when the ten year statute of limitation began to run. The Trial Court resolved this issue as follows:

In the words of the Sixth Circuit Court of Appeals in *Hodge [v. Service Machine Corp.*, 438 F.2d 347 (6th Cir. 1971)], a case Plaintiffs rely upon in support of their proposition about the accrual of their causes of action, "[a] cause of action accrues when a suit may be maintained upon it. A suit may not be brought upon a cause of action until it exists, and a cause of action does not exist until all its elements coalesce." *Hodge*, 438 F.2d at 349 (internal citation omitted). Plaintiffs misconstrue the nature of many of their causes of action insofar as they point to the date of Plaintiffs' actual retirement as the date on which Plaintiffs were allegedly wronged, arguing for

instance that the pensions themselves are the objects of Defendants' taking or impairment. However, the right at issue in this case is the right to purchase pension credit toward time served in the Department for years worked in other departments. As such, the date relevant to the accrual of Plaintiffs' cause of action is that which marks the termination of this right: June 1, 1987. Any unconstitutional impairment or taking of Plaintiffs' right to purchase pension credit occurred no later than that date, and likewise any allege *ultra vires* municipal acts related to the adoption of the Ordinance occurred, if at all, prior to that date. Thus, the elements of any causes of action that may have arisen from Defendants' adoption of the Ordinance and the voters' approval thereof certainly "coalesced" no later than June 1, 1987, and therefore began the running of the ten year statute of limitations.

Some of the Plaintiffs' equal protection claims, however, may satisfy the ten year statute of limitations. The elements of any of the Plaintiffs' equal protection claims could not have "coalesced" until such Plaintiffs were treated different by the Board than the allegedly similarly situated Department employees who were allowed to buy pension credits after the June 1, 1987 deadline. Any Plaintiffs who were denied permission to purchase pension rights within ten years of the initiation of this suit (i.e. at any time after April 4, 1996) are therefore within the ten year statute of limitations as to their equal protection claims. There is evidence that at least three Plaintiffs satisfy this criterion. . . . (footnote omitted)

After concluding that "at least three" plaintiffs had timely equal protection claims, the Trial Court discussed the merits of this particular claim. The Trial Court explained that, according to Plaintiffs, they were denied equal protection because although other police officers were allowed to buy back time spent in other city departments, Plaintiffs were not. The Trial Court characterized this as a "selective enforcement" claim, which required Plaintiffs to show they were singled out for adverse enforcement for an impermissible reason. The Trial Court explained that Plaintiffs essentially argued that because other pension members were allowed to buy back retirement credit contrary to the amended ordinance, then they also should be allowed to buy back retirement credit contrary to the ordinance. According to the Trial Court:

-10-

> Plaintiffs would have this court invalidate Defendants' present
> enforcement of the Ordinance in favor of action that Plaintiffs
> freely admit is "contrary to" the requirements of the law.
> Defendants are merely enforcing the Ordinance's deadline.
> Even if they did so incorrectly in the past, their current correct
> application of the law cannot be disturbed by this court without
> some proof of discriminatory animus on the one hand, or a total
> lack of reason on the other.

Because there was no evidence presented showing any proof of discriminatory animus and because the financial impact of the buy back provision on the actuarial soundness of the pension plan was a valid reason for the change to the Ordinance, the Trial Court concluded that Defendants were entitled to summary judgment on Plaintiffs' timely equal protection claims as well.

Plaintiffs appeal raising several issues, all of which surround the granting of Defendants' motion for summary judgment. In summary, Plaintiffs argue that the Trial Court incorrectly determined that the statutes of limitation had run on all but their equal protection claim. Plaintiffs also claim the Trial Court erred in granting summary judgment on their selective enforcement (equal protection) claim. Finally, Plaintiffs challenge whether they were given adequate notice that the City intended to amend the ordinance and institute a deadline for buying back retirement credit.

Defendants assert that the Trial Court correctly granted their motion for summary judgment. Defendants request an award of attorney fees incurred on appeal.

### Discussion

Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is
> well established. Because our inquiry involves a question of
> law, no presumption of correctness attaches to the judgment, and
> our task is to review the record to determine whether the
> requirements of Rule 56 of the Tennessee Rules of Civil
> Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49,
> 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816
> S.W.2d 741, 744 (Tenn. 1991).

A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id.* at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id.* at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

We first address whether the statutes of limitation had run on Plaintiff's various claims. Plaintiffs argue on appeal that the shortest potentially applicable statute of

limitations is the ten year statute of limitation found in Tenn. Code Ann. § 28-3-110(3), then go on to assert that this "may be a case in which there is no statute of limitations." At times before the Trial Court, Plaintiffs argued that perhaps the six year statute of limitations for breach of contract may apply. Defendants argue that Plaintiffs § 1983 claims have a one-year statute of limitations. With respect to the other claims, Defendants argue that the longest potentially applicable statute of limitations is the ten year statute of limitations found in § 28-3-110(3).[2]

In our opinion, the dispositive issue in this case is not which statutes of limitation apply, but rather when any such statute began to run. *Shadrick v. Coker*, 963 S.W.2d 726 (Tenn. 1998) involved, among other things, when a statute of limitation in a medical malpractice claim began to run. The Supreme Court explained:

> [A] plaintiff may not . . . delay filing suit until all the injurious effects and consequences of the alleged wrong are actually known to the plaintiff. *Wyatt v. A-Best Company*, 910 S.W.2d 851, 855 (Tenn. 1995). Similarly, the statute of limitations is not tolled until the plaintiff actually knows the "specific type of legal claim he or she has," *Stanbury*, at 672, or that "the injury constitute[d] a breach of the appropriate legal standard," *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994). Rather, as we have recently emphasized, the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. *Stanbury*, at 677; *see also Roe*, 875 S.W.2d at 657 ("[T]he plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct."). "It is knowledge of facts

---

[2] Tenn. Code Ann. § 28-3-110 provides that "[t]he following actions shall be commenced within ten (10) years after the cause of action accrued:

(1) Actions against guardians, executors, administrators, sheriffs, clerks, and other public officers on their bonds;

(2) Actions on judgments and decrees of courts of record of this or any other state or government; and

(3) All other cases not expressly provided for."

sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." *Stanbury*, at 678. Such knowledge includes not only an awareness of the injury, but also the tortious origin or wrongful nature of that injury. *Hathaway v. Middle Tennessee Anesthesiology, P.C.*, 724 S.W.2d 355, 359 (Tenn. App. 1986).

*Shadrick*, 963 S.W.2d at 733-34.

Returning to the present case, regardless of which statute of limitation ultimately applies, that statute began to run "when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *Id*. at 733. Attached to Defendants' motion for summary judgment was the affidavit of Mary Helms, head of the Local History and Genealogy Department at the Chattanooga-Hamilton County Library. According to Helms:

I personally researched and copied the following materials pertaining to the November 4, 1986 Election:

a. The legal notice entitled, "NOTICE OF REFERENDUM ELECTION City of Chattanooga, Tennessee Ordinance No. 8688," which ran in the *Chattanooga Times* on August 21, 1986, page E6 . . . .

b. The legal notice entitled, "NOTICE OF REFERENDUM ELECTION City of Chattanooga, Tennessee Ordinance No. 8688," which ran in the *Chattanooga News-Free Press* on August 21, 1986, Page G2 . . . .

c. The legal notice entitled "ELECTION SAMPLE BALLOT CHATTANOOGA SCHOOL BOARD AND CHARTER AMENDMENT Tuesday, November 4, 1986," which ran in the *Chattanooga Times* on October 31, 1986, page C5 . . . .

d. The legal notice entitled "ELECTION SAMPLE BALLOT CHATTANOOGA SCHOOL BOARD

AND CHARTER AMENDMENT Tuesday, November 4, 1986," which ran in the *Chattanooga News-Free Press* on October 31, 1986, page D3 . . . .

The referendum was published *in its entirety* in the paper prior to the election. Then, on November 4, 1986, the citizens of Chattanooga voted in favor of the referendum. Once the referendum was passed, the amended ordinance went on the books and in effect. It is inescapable that Plaintiffs either were or *should have* been aware of the alleged wrongful conduct (i.e., the establishment of a cut-off date of June 1, 1987, in which to buy back retirement credit for time spent in other City departments) at the very latest on November 4, 1986, when the referendum was passed by the voters. When the referendum was passed on November 4, 1986, anyone employed in the police or fire departments knew or should have known at that time that they had until June 1, 1987, in which to buy back retirement for time spent working in other city departments. Accordingly, we hold that any applicable statute of limitations began to run on November 4, 1986.

The present lawsuit was filed in April of 2006, over nineteen years after the referendum was passed by the voters. Since any statute of limitation began to run on November 4, 1986, it does not matter if a one-year, six-year, or ten-year statute of limitations applies because all of these statutes of limitations would have run long before the time this lawsuit was filed.[3]

Plaintiffs argue that they were "lulled" into not filing suit and, therefore, any applicable statute of limitations was either waived or should be tolled. As noted by the Supreme Court in *Paducah v. City of Johnson City*, 896 S.W.2d 767 (Tenn. 1995), "[p]ublic agencies are not subject to equitable estoppel or estoppel in pais to the same extent as private parties and very exceptional circumstances are required to invoke the doctrine against the State and its governmental subdivisions." *Id.* at 772 (quoting *Bledsoe County v. McReynolds*, 703 S.W.2d 123, 124 (Tenn.1985)). In *Elizabethton Housing & Dev. Agency, Inc. v. Price*, 844 S.W.2d 614 (Tenn. Ct. App. 1992); this Court stated:

> "It is significant to observe that in those Tennessee cases where estoppel was applied, or could have been applied, the public body took affirmative action that clearly induced a private party to act to his or her detriment, as distinguished from silence,

---

[3] A ten year statute of limitations is the longest statute of limitations Plaintiffs claim may be applicable to this case. We reject Plaintiff's unsupported assertion that this may be a case where no statute of limitations applies.

non-action or acquiescence." [*Bledsoe County v. McReynolds*], 703 S.W.2d at 125. . . . Estoppel is appropriate against government agencies only when the agency induced the party to give up property or a right in exchange for a promise. Thus, estoppel is appropriate when the facts clearly evidence an implied contract, *Gas-light Co. v. Memphis*, 93 Tenn. 612, 30 S.W. 25 (1894); *Trull v. City of Lobelville*, 554 S.W.2d 638 (Tenn. App. 1976); *Brown v. City of Manchester*, 722 S.W.2d 394, 397 (Tenn. App. 1986), or when the government induces a private party to relinquish a cause of action, *State ex rel. Ammons v. City of Knoxville*, 33 Tenn. App. 622, 232 S.W.2d 564 (1950).

*Price*, 844 S.W.2d at 618.

We do not find any conduct of the City that would rise to this level. Plaintiffs admit that when they sought to buy back retirement credit, their request was denied. Minutes from the Pension Board meeting of October 4, 1994, show that the City's attorney discussed the possibility of a lawsuit being filed. The record shows that at various times, one or two members of the Pension Board or City Council indicated they would support allowing a buy back of retirement credits. However, simply because a member of the City Council or the Pension Board supported Plaintiffs' position or because the City agreed to look into the matter further does not mean the City waived the issue or otherwise is estopped. In fact, in 2003, Plaintiffs and other similarly situated personnel were, as described by counsel for Plaintiffs on appeal, "invited" to file suit against the City. This is directly contrary to an assertion that they were "lulled" into not filing suit. Although Plaintiffs unsuccessfully sought to buy back retirement credit and the matter was discussed at Pension Board meetings, we find nothing in the record that could be characterized, even viewing the evidence and all reasonable inferences in the light most favorable to Plaintiffs, as the City inducing Plaintiffs to relinquish suing or as an estoppel to the City asserting a statute of limitations defense. *See Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 146 (Tenn. 2001)("Equitable estoppel only applies when the defendant has taken steps to specifically prevent the plaintiff from timely filing his complaint (as where he promises not to plead the statute of limitations.")). We further note that several of the events which Plaintiffs claim resulted in an estoppel or waiver occurred after any applicable statute of limitations had already expired.

-16-

We affirm the judgment of the Trial Court finding that the statute of limitations had run on all of Plaintiffs' claims except the selective enforcement claim.[4] As to this claim, we agree with the Trial Court that simply because, many years ago, the Pension Board may improperly have allowed several police officers to buy back credit for time spent in other departments, this does not automatically mean that not allowing Plaintiffs to improperly do the same thing amounts to a violation of the equal protection clause or results in illegal selective enforcement. If we accepted this argument, then we would have to "not apply" the amended ordinance to these Plaintiffs. In turn, Defendants, and the courts, would be prohibited from applying the amended ordinance to the next set of plaintiffs because they would be treating them differently than the current Plaintiffs, etc. The end result would be to completely invalidate the amended ordinance with respect to each and every member of the police and fire departments who previously worked in other departments.

In reaching the conclusion that there has been no selective enforcement, we emphasize that there has been no showing whatsoever that the City is enforcing the amended ordinance based on an impermissible criteria, such as race or sex, etc. There is no genuine issue as to this fact. Accordingly, the Pension Board need only have a rational basis for its actions. *See Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 518 (Tenn. 2005)("It is elementary that where neither fundamental rights nor suspect classifications are at issue, rational basis scrutiny applies."). Complying with the ordinance as amended by the citizens of Chattanooga clearly constitutes a rational basis for the action. Simply because the Pension Board may have improperly allowed some officers to buy back retirement credit more than a decade ago does not mean that the amended ordinance cannot be enforced properly now.

Finally, we address Plaintiffs' argument that they did not receive proper notice that the City intended on amending the ordinance. Assuming, without deciding, that Plaintiffs were entitled to due process prior to the ordinance being amended, the undisputed facts set forth above show that Plaintiffs and, indeed, the entire City were provided with abundant due process. Plaintiffs were provided notice in the newspapers on more than one occasion, the amendment was placed on the ballot, the amendment was put to a vote by the citizens of Chattanooga, and the amendment was passed by a majority of voters. In short, we conclude that Plaintiffs were provided ample due process including proper notice.

While this appeal was pending, Defendants filed a motion requesting an award of attorney fees pursuant to 42 U.S.C. § 1983. Defendants acknowledge that such an award would be discretionary. Exercising our discretion, we decline to award attorney fees. All remaining issues are necessarily pretermitted.

---

[4] We will assume, without deciding, that the statute of limitations for the selective enforcement claim had not run by the time suit was filed as to at least some of the Plaintiffs.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Chancery Court for Hamilton County solely for collection of the costs below. Costs on appeal are taxed to the Appellants, Charles H. Bryson, Randall Vincent Dean, James Terry Marlin, Paul W. Lee, Jr., Randy W. Dunn, Francene H. Fleming, Anderson G. Hass, Danny B. Hill, Thomas B. Kennedy, Thomas D. McKinney, Sully Batts, Kimberly K. Miller, Kenneth D. Phillips, Kimberly Reavley, and Bryan D. Moody, and their surety, for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE